W. Henry HAILE, Receiver-Appellant,

v.

**HENDERSON NATIONAL BANK,** Cleveland J. Bridges and Betty Bridges, Defendants-Appellees.

No. 79–1296.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1981.

Decided Aug. 13, 1981.

Rehearing and Rehearing En Banc Denied Sept. 25, 1981.

W. Henry Haile, Haile & Martin, Nashville, Tenn., for receiver-appellant.

John M. Heacock, Jr., Lanier, Shaver & Herring, Huntsville, Ala., Richard Dance, Nashville, Tenn., for Henderson Nat. Bank.

George R. Stuart III, James S. Ward, Charles Dauphin, Birmingham, Ala., Thomas K. Jefferson, Huntsville, Ala., for defendants-appellees.

Cleveland J. Bridges, Betty Bridges, pro se.

Before WEICK, KEITH and MARTIN, Circuit Judges.

WEICK, Circuit Judge.

W. Henry Haile, Receiver of Apostolic Faith Church of God Live Forever, Inc., appellant, has appealed from an order of the United States District Court for the Middle District of Tennessee dismissing certain ancillary actions and proceedings against Cleveland J. and Betty Bridges and the Henderson National Bank for lack of *in personam* jurisdiction. The sole question presented for review is whether the minimum contacts analysis of *International Shoe v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny properly applies to ancillary actions and proceedings brought by a federal receiver appointed pursuant to *Fed.R.Civ.P.* 66 and 28 U.S.C. §§ 754 and 1692.

### I

The place of incorporation for the Apostolic Faith Church of God Live Forever, Inc.

was a matter of some dispute below. The Church was founded in Louisville, Kentucky, sometime in the early 1960's. It was later chartered as a non-profit religious corporation under the laws of the State of Kentucky. John W. Barber, the self-appointed Bishop of the Church, was an itinerant evangelist. In 1970, the Church's headquarters were moved to Decatur, Alabama, and it was later incorporated in Colbert County, Alabama. In 1971, the Church obtained a certificate to do business in the State of Georgia. This began a period of growth and expansion for the Church in terms of activity, though not in terms of membership.

The Church began to operate and acquire assets in Kentucky, Alabama, Georgia, Michigan, Florida, Tennessee, Connecticut and in other (some as yet undetermined) locales as well. The growth was the result of a fraudulent and mismanaged bond issuance scheme engineered by Barber, Henry Atkeison, Woodrow Boggs, Jr. (the Church's attorney), and Thomas L. Hill (a Church officer). This fraudulent bond scheme resulted in the criminal conviction of Atkeison and in debts owed to the Williamson County Bank and the Third National Bank of Nashville. These debts precipitated the receivership and the instant litigation.

In the course of the Church's wheeling and dealing, the Third National Bank became the holder of approximately $186,-400.00 in notes secured by bonds in the face amount of $186,250.00 issued by Apostolic. These notes had been discounted by Apostolic to the Christian Credit Corporation, which in turn had pledged the notes and bonds as collateral for a loan at Third National Bank. The debt to the Williamson County Bank was undisputed.

In September and October of 1975, the two banks filed separate suits in the United States District Court for the Middle District of Tennessee against Apostolic to collect the debts owed them. On December 10, 1975, the two cases were consolidated. Judgment was entered in favor of the banks, and on February 11, 1976, at the request of the banks, Haile was appointed receiver of Apostolic and its assets.

As Haile began to investigate Apostolic, it became apparent that the Church and its officers had seen the writing on the walls as early as 1974 and had begun to transfer its assets to various newly-formed corporations with the intent to protect its remaining assets from pending judgments and to defraud creditors. Some transfers were made after the appointment of the receiver. In its Memorandum of April 4, 1978, the district court found that:

> Miracle Deliverance Revivals, Inc., Thomas L. Hill, Barber Enterprises, Inc., Apostolic Rescue Home and Apostolic Faith Church of God Live Forever, Inc., an Alabama corporation, are all alter egos of John H. Barber and Apostolic Faith Church of God Live Forever, Inc., a Kentucky corporation, and that all of these corporations were so completely under the dominion and control of John W. Barber as to exist only on paper.

The court further found that:

> [b]ased on the above finding, the assets of Thomas L. Hill, Miracle Deliverance Revivals, Inc., Barber Enterprises, Inc., and Apostolic Faith Rescue Home, Inc., are properly subject to the receivership, because they are, in fact, the assets of Barber and Apostolic.

In commenting upon the conduct of the defendants both prior and subsequent to the institution of proceedings in the Middle District of Tennessee, the court stated as follows: "Never in the legal experience of this court, which spans 41 years as a lawyer and judge, has there ever been such a display of fraud, evasion and deceit."

The factual background delineated above is relevant to the issue presented herein only in so far as it sets the background against which the ancillary proceedings challenged on appeal may be viewed in perspective. The primary action in which Haile was appointed receiver is not challenged on this appeal. The propriety and validity of his appointment are conceded. It is the power of the receiver and the appointment court in the ancillary proceedings which is questioned.

## II

In appointing Haile federal equity receiver pursuant to *Fed.R.Civ.P.* 66,[1] and 28 U.S.C. §§ 754[2] and 1692,[3] the district court ordered, *inter alia*:

\* \* \* \* \* \*

3. That until the further order of this Court the said receiver be and hereby is authorized forthwith to take and have complete and exclusive control, possession and custody of all the assets and property of the defendants.

4. That the said defendants and any persons holding property of the defendants shall, upon presentation of a certified copy of this order, deliver to the receiver any and all properties of the defendants, Apostolic Faith Church of God Live Forever, Inc. and John W. Barber, real or personal, in their possession or under their control; and that all persons are enjoined from in any way disturbing the possession of the receiver and from prosecuting any actions which affect the property of said defendants;

5. That said receiver be and he hereby is authorized to receive and collect any and all sums of money due or owing to the defendants in any manner whatsoever, whether the same is now due or shall hereafter become due and payable.

\* \* \* \* \* \*

7. It is further ORDERED that all creditors of the defendants are restrained from prosecuting any action which affects the property of the defendants, or interferes with the use of properties in the hands of the receiver under the terms of this order.

IT IS FURTHER ORDERED:

8. That the defendants, Apostolic Faith Church of God Live Forever, Inc. and John W. Barber and their respective officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, except the receiver, are enjoined from directly or indirectly:

a. transferring, receiving, changing, encumbering, selling, removing, assigning or otherwise disposing of any assets and property owned, controlled or in possession of Apostolic Faith Church of God Live Forever, Inc. or John W. Barber;

b. destroying, altering or otherwise disposing of any books and records of accounts, titles, documents and other papers of any kind belonging to the defendants or containing information about the defendants' activities, except

---

1. *Fed.R.Civ.P.* 66 provides:

   Receivers Appointed by Federal Courts

   An action wherein a receiver has been appointed shall not be dismissed except by order of the court. The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules.

2. 28 U.S.C. § 754 provides:

   Receivers of property in different districts

   A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

   He shall have capacity to sue in any district without ancillary appointment and may be sued with respect thereto as provided in section 959 of this title.

   Such receiver shall, within ten days after the entry of this order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

3. 28 U.S.C. § 1692 provides:

   In proceedings in a district court where a receiver is appointed for property, real, personal or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

that the defendants and their agents shall, upon demand, surrender said books and records to the receiver;

9. No property or assets of the defendants may be sold, abandoned or disposed of pending further orders of this Court.

\* \* \* \* \* \*

Acting pursuant to the court's order of February 11, and in accordance with 28 U.S.C. § 754, Haile filed certified copies of the complaint and order appointing him receiver with the clerk of the United States District Court for the Northern District of Alabama on February 12, 1976.

Cleveland J. Bridges is pastor of the New Jerusalem Apostolic Faith Church in Decatur, Alabama. This is the mother church of the Apostolic Faith Church of God Live Forever, Inc. Bridges and his wife Betty are citizens and residents of Huntsville, Alabama. Huntsville is located in the Northern District of Alabama. On or about October 4, 1974, the Bridges executed and delivered to the debtor, John W. Barber, a promissory note in the amount of $3,800.00. The note was secured by a mortgage on real property located in Huntsville, Alabama, executed and delivered to Barber on or about October 4, 1974. A few payments were made and then the Bridges defaulted on the note. Pursuant to his duties as receiver, Haile brought suit on the note against the Bridges on August 29, 1977 in the court of his appointment. Service was attempted by United States Marshals on several occasions but was evaded by the Bridges. Service was also attempted by attachment of the real estate located in Alabama. Upon the Bridges' failure to answer, default judgment was entered in favor of the receiver on March 28, 1978.

On April 5, 1978, the Bridges made a "special appearance" in the appointment court for the purpose of challenging the court's jurisdiction over their persons or property.[4] The basis of their challenge was a lack of minimum contacts with the State

of Tennessee and a lack of effective service of process.

By Memorandum and Order of February 26, 1979, the appointment court dismissed the action against the Bridges finding that the court did not have jurisdiction to entertain the suit. Significantly, the Memorandum cites no cases in support of the dismissal. The court reasoned as follows:

The defendants are non-residents of the State of Tennessee. They have no minimal contacts with this state. Although a suit on the note is a transitory action, defendants have not subjected their persons to this court. Customarily a suit involving the title to real estate is local in nature. The receiver has not taken possession of the real estate. Defendant's do not attack the receiver's possession of or ownership of the note in question.

Upon analysis, 28 U.S.C. § 754 vests the receiver with the possession and control of property of the debtor. But under the facts of this case neither 28 U.S.C. § 754 nor 28 U.S.C. § 169[2], contrary to the contention of the receiver, grants this court personal jurisdiction of the defendants nor their property.

On March 1, 1976, Haile had filed suit against Miracle Deliverance Revivals, Inc. alleging that it was the alter ego of Apostolic and that its assets were the assets of Apostolic. On that date, the appointment court issued a Temporary Restraining Order restraining the debtors and others from:

directly or indirectly selling, assigning, pledging or transferring, or otherwise concealing, disposing or dissipating any assets owned by said defendants, or in which the defendants have any interest, as well as any assets belonging to Apostolic Faith Church of God Live Forever, Inc., and John W. Barber a/k/a Bishop John W. Barber.

As noted above, the court agreed with its receiver and found Miracle Deliverance to be a sham corporation created for the pur-

---

4. We note that a "special appearance" to challenge jurisdiction is no longer necessary under the Federal Rules. A defendant must attack the validity of service of process pursuant to Rule 12(b).

pose of shielding Apostolic's assets from creditors. (Memorandum of April 4, 1978) A copy of the Restraining Order was sent by certified mail to the Henderson National Bank in Huntsville, Alabama on March 2, 1976.

On February 12, 1979, the receiver filed an Application for a Turnover Order against the Henderson National Bank in the appointment court in the Middle District of Tennessee, a certified copy of which was sent to the Bank. The Application alleged that:

5. On March 2, 1976, an officer of the Henderson National Bank had a telephone conversation with Alphonso Beckles, one of the attorneys for the debtor, in which the two of them mutually agreed to liquidate two certificates of deposit in the name of Miracle Deliverance Revivals, Inc., in the amount of approximately $29,500.00, plus interest, and apply these proceeds to liquidation of certain notes which, on information and belief, were not then in default, owed by members of the Apostolic Faith Church of God Live Forever, Inc. to Henderson National Bank. Even though the bank claims that it was exercising its right to "set off" these certificates of deposit against the notes of third persons, none of these notes were marked "satisfied," and the bank continued to receive payments for several months.

6. Henderson National Bank has refused to surrender to your receiver these certificates of deposit or the proceeds thereof.

WHEREFORE, Your Receiver prays for an Order requiring the Henderson National Bank appear and show cause why it should not be ordered to turn over the certificates of deposit or the proceeds thereof, totalling $29,500.00 plus interest from June 5, 1975 to the Receiver.

The district court entered a show cause order against the Henderson National Bank on February 14, 1979.

The Henderson National Bank filed a motion to dismiss on March 1, 1979. As grounds for dismissal the bank alleged, *inter alia*, that venue was improper under 12 U.S.C. § 94;[5] that it was not a party to the action in which the receiver was appointed and had not been served with process therein pursuant to *Fed.R.Civ.P.* 4; and that 28 U.S.C. §§ 754 and 1692 did not confer jurisdiction.

In a Memorandum and Order entered March 19, 1979, the district court dismissed the proceeding against the bank finding that it lacked jurisdiction. The court found that there was no showing that the bank had any minimal contacts with the State of Tennessee or the Middle District of Tennessee, although the bank was located close to the border between the two states. The court rejected the receiver's argument that 28 U.S.C. §§ 754 and 1692 effectively expand the geographical limits of the district court in which the receiver is appointed to all locations where there are assets which belong to the receivership estate and where the appropriate papers have been filed as provided in § 754. The court agreed that upon his appointment the receiver acquired possessory rights in all of the assets of Apostolic and that the finding that Miracle Deliverance was the alter ego of Apostolic clearly established the possessory right of the receiver to the certificates of deposit. The court ruled, however, that the above statutes do not address the jurisdiction of the person against whom claims may be filed, nor do they purport to extend the jurisdiction of the United States District Courts. The court concluded that the bank was without the territorial jurisdiction of the court and that therefore the court did

---

5. 12 U.S.C. § 94 provides:

Venue of suits

Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

(see discussion, *infra*, note 6)

not have personal jurisdiction. The court directed that the suit be litigated in the United States District Court having territorial jurisdiction of Huntsville, Alabama.

The suits and proceedings against the Henderson National Bank and the Bridges were consolidated for appeal and by Order entered April 30, 1979, the attachment of the real estate involved in the Bridges' suit was continued pending appeal.

For the reasons which follow, we reverse and remand for proceedings not inconsistent with this opinion.

### III

■■■ We begin with the undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit.[6] As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction. *Pope v. Louisville, New Albany & Chicago Ry. Co.*, 173 U.S. 573, 19 S.Ct. 500, 43 L.Ed. 814 (1899); *United States v. Franklin National Bank*, 512 F.2d 245 (2d Cir. 1975); *Roof v. Conway*, 133 F.2d 819 (6th Cir. 1943); *Tcherepnin v. Franz*, 485 F.2d 1251 (7th Cir. 1973); *S. E. C. v. Investors Security Corp.*, 560 F.2d 561 (3rd Cir. 1977); Wright, *Law of Federal Courts*, § 9 at 21 (3d ed. 1976); 7–Pt. 2 *Moore's Federal Practice*, ¶ 66.07[3], at 1938 (2d ed. 1980). Thus, the District Court for the Middle District of Tennessee clearly has ancillary subject-matter jurisdiction of the instant consolidated cases. The questions

remaining are whether the court obtained personal jurisdiction of the defendants-appellees and, indeed, what analysis should be applied in determining that question.

The district court applied the standards of *International Shoe v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and ruled that since the appellees did not have sufficient minimum contacts with the State of Tennessee, the court could not exert personal jurisdiction over them. The court reasoned in terms of its power to extend its jurisdictional power beyond what it viewed as the territorial limits of its jurisdiction. As will be demonstrated below, however, the analysis of *International Shoe* and its progeny[7] is inapplicable to the case at bar.

### IV

*International Shoe* has always been applied to the power of state courts, and federal courts sitting in diversity, to extend their process beyond the borders of the state in order to compel the presence of non-residents. The analysis has developed into a two-step approach where the court first determines whether a state long-arm service of process statute exists, and then determines whether compelling the defendants to appear pursuant to the long-arm comports with principles of due process. *See, e. g., Gatewood v. Fiat*, 617 F.2d 820 (D.C.Cir.1980); *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir. 1978), cert. den., 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174; *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977). The second determination involves the minimum contacts test of *International Shoe*. An

---

**6.** We ascribe to the view, under the facts and circumstances of this case, that where jurisdiction is ancillary, the post-jurisdictional consideration of venue is ancillary as well. *See,* Wright, *Law of Federal Courts* § 9, at p. 24 (3d ed. 1976); Bator, Mishkin, Shapiro, Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System*, p. 1111 (2d ed. 1973); *see, e. g., Casey v. Adams*, 102 U.S. 66, 26 L.Ed. 52 (1880); *Dickey v. Turner*, 49 F.2d 998 (6th Cir. 1931); *Odette v. Shearson, Hammill & Co., Inc.*, 394 F.Supp. 946 (S.D.N.Y.1975). We

therefore reject appellee Henderson National Bank's argument that the suit was properly dismissed since venue was improper under 12 U.S.C. § 94.

**7.** *See, e. g., Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

exhaustive search of decisions involving the federal receivership statutes reveals no case where a minimum contacts test was applied to non-resident defendants.

The reason for this dearth is quite simple. An ancillary receivership action does not involve an attempt by a state court or a federal court sitting in diversity to extend its power beyond its territorial limits through the use of a state long-arm service of process statute. The reason that a different analysis must be applied is two-fold. First, an ancillary receivership action is not an exercise of extra-territorial jurisdiction; and second, the territorial limits of the appointment court's effective service of process are extended to any district to which its territorial jurisdiction has been expanded by the presence in that district of property belonging to the receivership estate.

## A.

■ In his chapter on receivers appointed by federal courts, Professor Moore discusses the development of federal receivership law from 1789 to the present. 7–Pt. 2 *Moore's Federal Practice*, ¶ 66.01 ff (2d ed. 1980). Following the 1948 revision of the Judicial Code, the present 28 U.S.C. § 754 now provides, in pertinent part:

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

.     .     .     .     .

Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

In discussing the effect of the 1948 revision, Professor Moore states as follows:

As indicated in the Reviser's Note § 754 extends the operation of old § 56 in three respects: (1) Its application is no longer confined to property "of a fixed character"; it applies to any property. (2) Extension of the appointing court's jurisdiction is no longer limited to one federal circuit; it now acquires jurisdiction over property in any federal judicial district even though located in different judicial circuits. (3) Failure to file copies of the complaint and order of appointment in any district no longer divests the appointing court of jurisdiction over all property located outside the state in which the suit was brought; it now divests the court of jurisdiction only over the property in the district where the copies are not filed. (footnote omitted)

7–Pt. 2 *Moore's Federal Practice*, ¶ 66.-08[1] at 1949–50.

In addition, 28 U.S.C. § 1692 now provides:

In proceedings in a district court where a receiver is appointed for property, real, personal or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

In discussing this section, Moore states that:

This is a conforming extension of the provisions relating to process formerly contained in § 56 and represents an exception to the general rule that process of the federal district court extends only throughout the state in which the court is held. (*Id.*) (footnote omitted)

We are therefore of the opinion that the instant case does not present a situation where a district court has attempted to extend its jurisdiction beyond its territorial limitations. Rather, by statute, the territorial jurisdiction of the appointing court is extended to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754. In the instant case, the documents were

properly filed. The court in which the federal receiver is appointed thus has ancillary subject-matter jurisdiction of suits brought by the receiver in the execution of his duties, and the court's geographical jurisdiction is extended to all districts where receivership property is found. The question remaining then is how effective service of process may be had in such districts.

### B.

Rule 4 of the Federal Rules of Civil Procedure [8] contemplates the use of statutes of the United States which provide for service of process upon a party not an inhabitant of or found within the state in which the district court is held. The statute of the United States which provides for service of process beyond the territorial limits of the state in which the district court sits in the case at bar is 28 U.S.C. § 1692. By the terms of Rule 4(e), where a federal statute such as § 1692 provides for nationwide service of process, but does not provide the specific manner of service, then service may be made in accordance with Rule 4.

The question of whether service in accordance with a manner provided in Rule 4 was had upon either the Henderson National Bank or the Bridges was not addressed by the district court in its opinions dismissing the actions and proceedings below. The bank received certified copies of a number of orders of the district court and had notice of the proceedings. The Bridges were apparently able to dodge personal service, but their real estate securing the note was attached pursuant to an order which has been continued pending this appeal. Based upon the record forwarded to this court, we decline to make a determination as to the validity of the service. Nor do we address any issue as to whether the Application for a Turnover Order against the Henderson National Bank may be summarily determined or whether plenary action is required. These determinations must be left to the district court on remand.

### V

In an action where service of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe* do not apply. It has been argued that:

The principles of *International Shoe* are grounded upon concepts of territorial limitations on the power of the respective states to subject nonresidents to the jurisdiction of their courts. Accordingly, in federal question litigation where Con-

---

8. *Fed.R.Civ.P.* 4 provides in pertinent part:

(d) *Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

.        .        .        .        .

(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

(e) *Same: Service Upon Party Not Inhabitant of or Found Within State.* Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the

district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

(f) *Territorial Limits of Effective Service.* All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

gress has provided for nationwide service of process, there is no due process requirement of "minimal contacts" to justify the exercise of jurisdiction by federal courts. (2 *Moore's Federal Practice,* ¶ 4.25[5] at 4–260)

It may well be that a suit brought by a federal receiver in the appointing court to collect a debt owed the estate is one arising under the Constitution and laws of the United States. *See, Texas & P. Ry. Co. v. Cox,* 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829 (1892); and *see generally,* 28 U.S.C.A. § 1331, note 235, and cases cited. We need not make any determination in that respect, however, since the subject matter jurisdiction in the instant case is ancillary and not dependent upon any factors which would normally determine jurisdiction. In addition, as it has done in other instances,[9] Congress has provided for service of process beyond the territorial limits of the state in which the district court sits in 28 U.S.C. § 1692.

The effect of such Congressional action was carefully analyzed in *Driver v. Helms,* 74 F.R.D. 382 (D.R.I.1977), *modified on other grounds,* 577 F.2d 147 (1st Cir. 1978) (affirming the district court's reasoning and holding as to personal jurisdiction), *cert. den.,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72, relying heavily upon *Mariash v. Morrill,* 496 F.2d 1138 (2nd Cir. 1974). In discussing the nationwide service of process provided for in 28 U.S.C. § 1391, the court spoke as follows:

> ... For those cases in which Congress has decided that the jurisdiction of federal courts shall be coextensive with the jurisdiction of the states in which they sit (that is, all cases directly ruled by Rule 4(d)), minimum contacts analysis is indeed in order. State courts may exercise jurisdiction only over defendants within their territory or over defendants who are deemed present within the territory by virtue of purposeful activity which constitutes such minimum contacts. *International Shoe, supra.*

However, Congress may provide for national service of process, i. e., national exercise of personal jurisdiction by each of the district courts based on presence of the defendant in the United States, rather than in any particular state. *Robertson v. Railroad Labor Board,* 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119 (1925). *See Hart and Wechsler, supra,* at 1106. When Congress does not provide, the district court's service is not constrained by the due process (*International Shoe, Hanson v. Denckla*) limits to which state courts are subject. *See Mariash v. Morrill,* 496 F.2d 1138, 1142–43 (2d Cir. 1974). Instead, the due process limitation on national service of process is found by inquiring into the fairness of such jurisdiction in the particular circumstances and facts of the case at hand, an inquiry mandated by the Fifth Amendment Due Process Clause. *Mariash v. Morrill, supra,* at 1142–43; *see also Oxford Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 198–205 (E.D.Pa.1974). *Cf. International Shoe, supra,* 326 U.S. at 320, 66 S.Ct. 154 [at 160].

> ... In *Mariash v. Morrill, supra,* the Second Circuit held that Congressionally authorized national jurisdiction satisfied due process if it was based on service calculated to inform the defendant of the proceedings in order that he may take advantage of the opportunity to be heard. As Chief Judge Kaufman noted, speaking for a panel including Associate Justice Clark, nationwide service of process, when authorized by Congress, is not extra-territorial at all. Therefore, the due process limitation on such process should be precisely the limitations applicable on a state's process within its territorial limits; notice calculated to inform the defendant of the pendency of the suit. *Mullane v. Central Hanover Bank and Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

(*Driver v. Helms, supra,* 74 F.R.D. at 390–91) (footnotes omitted)

**9.** For a discussion of these many other instances, *see generally,* 2 *Moore's Federal Practice*

¶ 4.33 at 4–362 ff (2d ed. 1980).

We find the reasoning in *Driver v. Helms* to be directly applicable to the case at bar. The process authorized by § 1692 is not "extra-territorial" but rather nationwide. The appointment court's process extends to any judicial district where receivership property is found. As such, the minimum contacts analysis, as a limitation on state extra-territorial power, is simply inapposite.[10]

The due process aspects of service of process in the instant case are to be examined under *Mullane v. Central Hanover Bank and Trust*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny rather than under *International Shoe v. State of Washington, supra*. The issue is one of fairness and notice under the Fifth Amendment. That is, the question is whether the service was reasonably calculated to inform the defendants of the pendency of the proceedings against them in order that they might take advantage of the opportunity to be heard in their defense.[11] *Mariash v. Morrill, supra*, 496 F.2d at 1142–1143, 1143 nn. 6–9; *Driver v. Helms, supra*, 74 F.R.D. at 389–391, 391 n. 6.

Accordingly, the decision of the district court is reversed and the case remanded for proceedings consistent with this opinion.

KEITH, Circuit Judge, dissenting.

I respectfully dissent. The majority opinion holds that Congress may require a citizen to submit to the jurisdiction of any one of the 95 federal district courts in this country without regard to whether the citizen has had previous contact with a particular jurisdiction. In so holding, the majority concludes that the appellees may be sued in federal district court in Tennessee even though they have never had any contact with that State.

The court, in refusing to apply a "minimum contacts" analysis to the facts of this case, attempts to distinguish the Supreme Court's decision in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The majority first states that the "minimum contacts" test was not originally intended to restrict a federal court's exercise of jurisdiction over persons residing within the territorial boundaries of the United States. It then concludes that *International Shoe's* analysis must be limited to questions involving a state's power to compel the appearance of non-resident defendants before courts within the borders of the state. However, more recent developments in the law recognize that an analy-

---

**10.** The majority today does not, contrary to the characterization of the dissent, at pp. 826–827, conclude that the *International Shoe* analysis must be limited merely to questions involving a *state's* power to compel the appearance of non-resident defendants before courts within the borders of the state, or that the analysis does not apply to federal question cases generally. Quite to the contrary, the minimum contacts analysis properly applies to extraterritorial assertions of personal jurisdiction by state courts, by federal courts sitting in diversity, and in other cases where a federal court must borrow a state long-arm statute in order to acquire personal jurisdiction over a non-resident defendant. The analysis will apply whether the federal court's *subject matter* jurisdiction is based on a federal question (28 U.S.C. § 1331) or diversity of citizenship (28 U.S.C. § 1332). It is only where, as here, Congress has provided for nationwide service of process that the *International Shoe* analysis becomes inapposite.

The real point of difference would appear to be whether the minimum contacts analysis, as such, should be applied as *a component* of the 5th Amendment due process test. The dis-

sent's five-part balancing test, adapted from *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 203–4 (E.D.Pa.1974), includes the minimum contacts test as its first consideration. In this connection, we find the reasoning of the Second Circuit compelling:

> ... The "minimal contacts" principle does not, in our view, seem particularly relevant in evaluating the constitutionality of in personam jurisdiction based on nationwide, but *not* extraterritorial, service of process. It is only the latter, quite simply, which even raises a question of the forum's power to assert control over the defendant. *Mariash v. Morrill*, 496 F.2d 1138, at 1143 (2nd Cir. 1974) (emphasis in original, footnote omitted).

**11.** Since, as demonstrated above, service in the instant case must be made in any *manner* provided in Rule 4, if the district court determines on remand that service was made in any such manner, then such service would meet the standard imposed herein. If proper service was not made, the receiver should be afforded the opportunity to obtain such service.

sis similar to that used in *International Shoe* must also be applied in federal question cases. *Black v. Acme Markets, Inc.,* 564 F.2d 681, 686 n.8 (5th Cir. 1977); *Lone Star Package Car Co. v. Baltimore and Ohio R. Co.,* 212 F.2d 147, 155 (5th Cir. 1954); *Fraley v. Chesapeake and Ohio Ry.,* 397 F.2d 1, 3 (3d Cir. 1968); *Oxford First Corporation v. PNC Liquidating Corp.,* 372 F.Supp. 191, 198 (E.D.Pa.1974); *Getter v. Dickinson & Company,* 366 F.Supp. 559 (S.D.Iowa 1973). *See also Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *United States v. Scophony Corp.,* 333 U.S. 795, 804 n.13, 68 S.Ct. 855, 860 n.13, 92 L.Ed. 1091 (1948). *But see First Flight Company v. National Car Loading Corporation,* 209 F.Supp. 730, 736 (E.D. Tenn.1962). The due process clause of the Fifth Amendment protects citizens from the arbitrary exercise of *in personam* jurisdiction by federal courts just as the due process clause of the Fourteenth Amendment protects citizens from such action by state courts. The majority acknowledges the applicability of the Fifth Amendment's due process clause here. However, the court states that in the federal question cases, the only due process restriction on the exercise of *in personam* jurisdiction by federal district courts over persons residing within the United States is the notice requirement of *Mullane v. Central Hanover Bank and Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny. The *Mullane* test, which requires "notice reasonably calculated . . . to apprise interested parties of the pendency of the action," *id.* at 314, 70 S.Ct. at 657, defined the right protected by the Fifth Amendment's due process clause as the "fundamental right . . . to be heard." *Id.*

It is my belief that the majority mistakes *Mullane's* requirement of reasonable notice as the constitutional right at issue in that case; when in fact, reasonable notice is only one means adopted by the Court to ensure that the individual's fundamental right to be heard is not abridged. Common sense dictates that a court cannot numbly apply *Mullane's* notice requirement as if notice alone assures due process. Moreover, since the decision in *International Shoe,* the Supreme Court has recognized that there may be other due process limitations on a federal court's exercise of *in personam jurisdiction.* However, the Court has not had occasion to define the limits on Congress' power to compel an individual to defend a federal question suit in a distant federal forum. In *United States v. Scophony Corp.,* the Court stated:

> [T]he government, however, suggests that, in view of our recent decision in *International Shoe Co. v. Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95], which was concerned with the jurisdiction of a state over a foreign corporation for purposes of suit . . ., and in view of aspects of similarity between that problem and the one now presented, we extend to this case and to § 12 [of the Clayton Act] the criteria there formulated and applied. There is no necessity for doing so. The facts of the two cases are considerably different and, as we have said, we are not concerned here with finding the utmost reach of Congress' power. *Id.* at 804 n.13, 68 S.Ct. at 860 n.13.

The *Scophony* Court found it unnecessary to determine if the *International Shoe* criteria should be extended to federal question cases since the defendants met the jurisdictional prerequisites required under both the applicable statutes and the "minimum contacts" test formulated in *International Shoe.*

In light of the absence of Supreme Court authority on this question, I am persuaded by those courts which have held that any constitutionally acceptable test must be based on the notions of "fairness and substantial justice" relied on in *International Shoe, supra* at 316, 66 S.Ct. at 158. The Supreme Court's decision in *Shaffer v. Heitner, supra,* strongly suggests that the Court would also use those notions as guideposts for determining the constitutionality of an exercise of *in personam* jurisdiction in federal question cases against an alleged denial of due process. *United States v. Scophony Corporation, supra.*

The *Shaffer* Court reaffirmed the importance of applying a basic fairness test in determining whether an individual's right to be heard has been infringed upon by a court's exercise of personal jurisdiction. Justice Marshall, writing for the *Shaffer* majority, stated that the "relationship among the defendant, the forum, and the litigation," rather than the outdated concept of territorial sovereignty is now the central concern in any inquiry into personal jurisdiction. 433 U.S. at 204, 97 S.Ct. at 2580. Of course *Shaffer* involved the exercise of state power against a non-resident defendant and did not address the question of personal jurisdiction in federal question cases. Nonetheless, the case is of great significance because it indicates that the Supreme Court would apply a traditional fairness test to any claimed denial of the fundamental right to be heard whether made against a state or federal court. This test recognizes the due process rights of all defendants by its abandonment of the territorial sovereignty strictures of the *International Shoe* analysis.

I do not suggest that this "modern" *International Shoe* analysis applied in *Shaffer* should be blindly adhered to in federal question cases. I think that the analysis should be modified for use in federal question cases where the policy considerations for exercise of personal jurisdiction often differ greatly from those of a lone state. A test which balances the federal and individual interests is necessary. Due process requires a balancing of the following factors in determining the fairness and, thus, the constitutionality of the exercise of personal jurisdiction by federal courts over its citizens:

(1) the extent of the defendant's contacts with the place where action was brought; (2) the inconvenience to the defendant of having to defend in a distant jurisdiction, taking into consideration the nature and extent and interstate character of the defendant's business, and the distance from the defendant of the place where the action was brought; (3) judicial economy—the judiciary's needs to avoid duplication of law suits and to ensure equality of treatment by having all possible defendants joined in a single lawsuit; (4) the residence(s) of the witness(es) and situs of documentary evidence; and (5) whether any governmental policy would be unduly thwarted by the federal court's refusal to exercise personal jurisdiction over the defendant. *Oxford First Corp., supra* at 203–04. *See also Lone Star Package Car Co. v. Baltimore & Ohio R. Co., supra; International Shoe v. Washington, supra.*

Applying the test outlined above, I would hold that the federal district court in Tennessee does not have jurisdiction over the Alabama residents. The appellees, Mr. & Mrs. Bridges and the Henderson National Bank, have had no contact with the forum court. No real property at issue in the case is located in the federal district which encompasses the State of Tennessee. The Bridges did not reside within the Middle District of Tennessee when they signed the promissory note, and the note was not to secure property located within that federal district. The Bridges were residents of Alabama during all times relevant to this litigation. The Bridges' property, seized through the Alabama Attachment procedure, is not the subject of the pending litigation nor is the underlying cause of action related to that property. The property seized through the attachment procedure—a 1967 Dodge pickup truck, and the appellees' real property located at 4223 Eastland Drive, Huntsville, Madison County, Alabama—have nothing to do with the proceedings initiated in the federal district court in Tennessee.

Also, the Henderson National Bank cannot be brought into federal district court in Tennessee to defend this action. All offices of the bank are located in Madison County, Alabama. The Bank has never conducted business in Tennessee. The certificates of deposit at issue here were in the exclusive possession of the bank prior to the appointment of the receiver on February 11, 1976, and at all times thereafter, including when Haile was appointed receiver of Miracle Deliverance Revivals, Inc., which was subsequent to February 11.

The federal policy encouraging consolidation of actions brought by a receiver cannot tip the balance in favor of jurisdiction where the defendants have had no contact with the state which defines the federal district. Congress has attempted to simplify the procedures a receiver must follow in order to marshall the assets of a bankrupt by allowing the receiver to sue any person allegedly holding property of the bankrupt in the federal district of the appointing court. 28 U.S.C. §§ 754, 1692. *See also United States v. Franklin National Bank*, 512 F.2d 245 (2d Cir. 1975); *Tcherepnin v. Franz*, 439 F.Supp. 1340 (N.D.Ill.1977). Congress apparently concluded that taking charge of the bankrupt's property and protecting the interests of the creditors would be more effectively handled by a receiver if the appointing court had a greater jurisdictional reach. While it is true that Sections 754 and 1692 further the federal policy of encouraging the efficient administration and disposition of the bankrupt's estate, I am not persuaded that this policy should be allowed to eviscerate the protections of the due process clause of the Fifth Amendment.

Since the appellees have had no contact with the Middle District of Tennessee, the fairness principles embodied in the due process clause of the Fifth Amendment preclude jurisdiction over the cause of action by any court, whether state or federal, in that district. Accordingly, I would affirm judgment of the district court dismissing both complaints for lack of personal jurisdiction.