787 F.2d 589
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
IN RE: D. H. OVERMYER TELECASTING CO., INC., CO., INC., Debtor.
 United States Court of Appeals, Sixth Circuit.
 3/7/86
 
 APPEAL DECIDED
 N.D.Ohio, 53 B.R. 963
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: KEITH and MARTIN, Circuit Judges; and SPIEGEL,* District Judge.
 PER CURIAM.
 
 
 1
 The appellants, Daniel H. Overmyer, Shirley Overmyer, John Overmyer, Edward Overmyer, and Elizabeth Overmyer, appeal from the district court's affirmance of the bankruptcy court's judgment which awarded equitable relief in favor of the defendants, D. H. Overmyer Telecasting Company and the First National Bank of Boston. Overmyer argues that the district court should not have used a 'clearly erroneous' standard in reviewing the bankruptcy court's findings of fact. In addition, Overmyer argues that the following errors were committed in the bankruptcy court: the bankruptcy court did not grant Overmyer a jury trial; the claims of the bank were precluded by the Massachusetts statute of limitations for contract actions; a continuance should have been granted because Overmyer was in poor health; Rule 12(b) of the Federal Rules of Civil Procedure was incorrectly applied when the bankruptcy court dismissed Overmyer's claims against the bank; Rule 1006 of the Federal Rules of Evidence was violated when charts were introduced with no underlying evidence; the court erred in granting post-petition interest; there was no basis for the remedy awarded because the court did not have personal jurisdiction over all parties affected by the judgment, and the bankruptcy court lacked subject matter jurisdiction. These arguments stem from a complex combination shell game and pyramiding scheme. We note only the pertinent facts.
 
 
 2
 After D. H. Overmyer Telecasting Company petitioned for reorganization under Chapter XI in bankruptcy court, Hadar Leasing International Company filed an adversary proceeding against Telecasting in Telecasting's Chapter XI proceedings. Hadar had previously filed a proof of claim against Telecasting and sought in the adversary proceeding to repossess Telecasting's equipment or condition future use of the equipment on receipt of rental payments for Telecasting. Hadar also sought to have Telecasting assume or reject leases for the equipment. Telecasting counterclaimed and the First National Bank of Boston, an equity security holder, intervened as a party defendant. The Bank incorporated Telecasting's pleadings and filed a additional counterclaim against Hadar. The Bank claimed that Hadar and other Overmyer entities had conspired to defraud the Bank by many methods including transferring assets without consideration or with backdated leases. The Bank, unable to determine the whereabouts of the property, sought in this action to obtain the security for its loans to the Overmyer entities. Hadar replied to the counterclaims, counterclaimed, and requested a jury. Daniel H. Overmyer, D. H. Overmyer Company, Overmyer Distribution Services, Inc., and Intermodal Systems Leasing, Inc. intervened on the plaintiff's side, filing pleadings against the Bank and requesting a jury. These pleadings were stricken because they were improperly filed. Later, Overmyer correctly filed his complaint.
 
 
 3
 The non-jury trial began on February 22, 1982, after the court held an evidentiary hearing to determine whether Overmyer was healthy enough to participate in the trial. Overmyer had requested a continuance on this basis. At the close of the plaintiffs' case, the Bank moved to dismiss the claims of plaintiff Overmyer and the other three Overmyer intervenors pursuant to Rule 41(b) of the Fed. R. Civ. P. The court granted the motion. After a seven-week trial, the court awarded Telecasting 3.4 million dollars and the Bank 22.4 million dollars to be paid jointly and severally by Hadar, Overmyer Distribution, Intermodal Systems, and Daniel Overmyer. The district court affirmed and we agree.
 
 
 4
 The Overmyers' only argument relating to the district court is that the district court used a 'clearly erroneous' standard in evaluating the bankruptcy court's findings of fact. The district court's review of the record is in accordance with Bankruptcy Rule 8013. In In re Martin, 761 F.2d 1163, 1166 (6th Cir. 1985), this Court approved of the use of the 'clearly erroneous' standard of the new rule. In Martin, as here, the bankruptcy decision was rendered prior to the time the new rule became effective while the district court reviewed the findings after the new rule became effective. The Martin Court noted that because the case involved traditional bankruptcy issues, the holding of 1616 Reminic Ltd. Partnership v. Atchison & Kellor Co., 704 F.2d 1313, 1318 (4th Cir. 1983), which stated that the 'clearly erroneous' standard could not be applied to peripheral issues such as common law breach of contract, was inapplicable. Martin, 761 F.2d at 1166. The claims and counterclaims in the Telecasting proceeding also involved traditional bankruptcy issues and therefore the 'clearly erroneous' standard was proper.
 
 
 5
 The appellants have asserted that they had a right to a jury for the bankruptcy court trial. There is no constitutional right to a jury trial in bankruptcy court because such proceedings are equitable in nature. Katchen v. Landy, 382 U.S. 323, 336-38 (1966). Further, if a party voluntarily submits to the jurisdiction of the bankruptcy court, there is no constitutional right to a jury even though there would have been a right to a jury trial if the party had made no claim in the bankruptcy court but rather waited until the trustee's plenary action. Katchen, 382 U.S. at 336-37.
 
 
 6
 Nor is there a statutory right to a jury trial. According to 28 U.S.C. Sec. 1480(a), if a jury trial was not required under the old Bankruptcy Act, it is not required by the Bankruptcy Code. This action by Telecasting and the Hadar Adversary Proceeding was clearly equitable in that it concerned the debtor's property in the actual or constructive possession of the bankruptcy court. Under the Act and therefore under the Code, there was no right to a jury in such summary proceedings. Hadar, by filing a proof of claim, and Overmyer, by intervening, voluntarily submitted to the jurisdiction of the bankruptcy court and the summary nature of the proceedings. See In re Axton, 641 F.2d 1262, 1268 (9th Cir. 1981); Pennsylvania ex rel. Feiling v. Sincavage, 439 F.2d 1133 (3d Cir. 1971); Page v. Arkansas Natural Gas Corp., 53 F.2d 27 (8th Cir. 1931), aff'd, 286 U.S. 269 (1932).
 
 
 7
 The appellants claim that the counterclaims of Telecasting and the Bank were barred by a Massachusetts statute of limitations prescribing the time in which a contract action must be commenced. However, the counterclaims were equitable in nature and were grounded upon Overmyer's scheme of continually and continuously defrauding the Bank, Telecasting and others, primarily by stripping and manipulating Telecasting's assets. Clearly, this was not an action on a contract as contemplated by any statute of limitations.
 
 
 8
 Clearly, the bankruptcy court's denial of a continuance on the basis of Overmyer's health was not an abuse of discretion. On the first day of trial Overmyer's attorney advised the court that Overmyer was ill. On the third day of trial, the Overmyer attorneys proffered an affidavit which stated that Overmyer was being treated for hepatitis and that his doctor had advised him that he should spend no more than four hours a day in his office. Overmyer had been in the office for more than eight hours on the Friday prior to trial and had reported there after trial had begun. The head of the hepatology section of the Cleveland Clinic testified that the evidence indicated no serious illness. A continuance would have greatly harmed the defendants. The court offered to modify the daily trial schedule to allow Overmyer to rest each day. In light of these facts, the bankruptcy court's decision not to grant a continuance was not an abuse of discretion. See Smith v. Daniels, 46 F.2d 740, 742 (6th Cir.), cert. denied, 283 U.S. 852 (1931). The bankruptcy court's denials of motions for continuance throughout the trial likewise were not abuses for the same reasons.
 
 
 9
 The appellants argue that the bankruptcy court lacked subject matter jurisdiction over this case. This Court ruled in White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 258 (6th Cir. 1983), that the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) 'validate[d] orders and dispositions by the bankruptcy courts which became final in the Bankruptcy Court as of December 24, 1982.' In this case, the judgment in bankruptcy court was entered on September 24, 1982, and became final on October 4, 1982. Bankruptcy Rule 8002(a). Therefore, the bankruptcy court had subject matter jurisdiction.
 
 
 10
 The procedural claims of error are equally meritless. The bankruptcy court did not commit error in dismissing the appellants claims under Fed. R. Civ. P. 41(b). The court allowed this motion after the appellants rested their case and based its decision on a failure of proof as well as res judicata. Rule 1006 of the Federal Rules of Evidence was not violated because the primary evidence for summaries and charts used in trial were made available as required by the rule.
 
 
 11
 Finally, Overmyer claims that the bankruptcy judgment was faulty for two additional reasons. First, Overmyer was directed to pay post-petition interest while he was only a guarantor. Second, there was no basis for the remedy awarded because the court did not have jurisdiction over all parties affected by the judgment. A guarantor is bound for the full amount of a debt even if the primary obligor is discharged in bankruptcy. United States v. Stribling Flying Service, 734 F.2d 221, 223 (5th Cir. 1984); Bankruptcy Act Sec. 16. As to the second of these judgment arguments, it is well settled that, when confronted with a fraud such as this, the federal court has broad equitable reach in order to fashion a remedy equal to the fraud. See, e.g., Haile v. Henderson Nat'l Bank, 657 F.2d 816 (6th Cir. 1981), cert. denied, 455 U.S. 949 (1982). The bankruptcy court utilized its powers to seize assets purportedly owned by Overmyer shell corporations but which were really the tools or fruits of the fraud perpetrated on the defendants, Telecasting and the First National Bank of Boston. The bankruptcy court's findings and the district court's holding that the Overmyer entities were controlled by Overmyer and were alter egos of him and each other make it plain that to the extent these entities had any separate existence, they could properly be bound by the court. A non-party may be bound by a judgment if a party's interest is so closely aligned to the non-party's interest so as to be representative. See Chicago, Rock Island & Pacific Railway Co. v. Schendel, 270 U.S. 611 (1926); Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1572 (Fed. Cir. 1983). In this case, the Overmyer entities and Overmyer were so related and control was so centralized, that Overmyer's presence in the suit was at least sufficiently representative so that the entities could be bound by the judgment. See Montana v. United States, 440 U.S. 147, 154 (1979). Notice to Overmyer was notice to the entitles.
 
 
 12
 We affirm.
 
 
 
 *
 Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation