**John H. OBEE, Plaintiff,**

**v.**

**TELESHARE, INC., International Tele-**

**share, Inc., Gary W. Aili, David Brunel, Sheila Reif, Timothy Brennan, Gerald Hatch, Thomas C. Michaels, Billy Jones, Robert S. Bosshart, and David Reif, Defendants.**

**No. 89–71541.**

United States District Court, E.D. Michigan, S.D.

Nov. 22, 1989.

---

Mark E. Hallada, Macdonald & Goren, PC, Birmingham, Mich., for plaintiff.

Gary Aili, Fort Collins, Colo., pro se.

William S. Dobreff, Dobreff & Dobreff, PC, Warren, Mich., for all other defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

Plaintiff John Obee alleges that defendants Teleshare, Inc. (Teleshare), International Teleshare, Inc. (International Teleshare), and certain of their officers (the individual defendants)[1] fraudulently solicited a series of loans and investments from him through the use of false and misleading statements. He sues for violation of the Securities Exchange Act of 1934, 15 U.S.C. sec. 78a et seq., the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. sec. 1961 et seq., the Michigan Uniform Securities Act, Mich.Stats.Ann. sec. 19.776(101) et seq., [M.C.L. § 451.501 et seq.] and for common law breach of contract, misrepresentation, and fraud. Defendants move to dismiss, alleging lack of in personam jurisdiction, failure to state a RICO claim, and improper venue. Defendants also move to compel a more definite statement under Fed.R.Civ.P. 12(e). Defendants' motions are DENIED. The reasons follow.

### II.

For the purposes of a motion to dismiss, the allegations of the complaint must be taken as true. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Plaintiff alleges that in October of 1986, he received a phone call from defendant David Reif who suggested that he contact defendant Aili about a possible investment opportunity. Plaintiff telephoned Aili, who briefly described Teleshare's operations and subsequently sent him an Investment Summary and a Private Placement Memorandum for an offering of common stock. After a review of the materials and several subsequent conversations with Reif and Aili, plaintiff purchased $25,000 worth of Teleshare stock.

In January 1987, defendant Brunel contacted plaintiff to inquire as to whether he would be willing to make a loan to the corporation. After several conversations during which Brunel allegedly made various statements, recommendations, and representations, plaintiff loaned Teleshare $25,000 in March 1987.

Brunel again contacted plaintiff in April 1987 to solicit his participation in another offering of Teleshare stock. Plaintiff was sent a Private Placement Memorandum. In reliance on the Memorandum and repre-

---

1. Individual defendant Gary Aili (Aili) is president of Teleshare. Defendant David Brunel (Brunel) is an officer and director of Teleshare. Defendants Timothy Brennan, Gerald Hatch, Thomas C. Michaels, Billy Jones, and Robert S. Bosshart are all officers and directors of Teleshare. Defendant David Reif (Reif) is a stockbroker with Prudential Bache Co. in Oklahoma. It is unclear from the complaint and RICO case statement who Sheila Reif is or what her role in the alleged fraudulent scheme was.

sentations made by Brunel, plaintiff purchased an additional $63,700 worth of Teleshare stock.

In September 1987, Brunel again contacted plaintiff to inquire whether he would be willing to extend another loan to Teleshare. After several telephone calls, plaintiff loaned International Teleshare $25,000.

In January 1988, Brunel contacted plaintiff to inquire whether he would be willing to redeem a portion of his two outstanding loans to Teleshare and International Teleshare in exchange for additional equity. In reliance on Brunel's statements, plaintiff redeemed a portion of his loans by taking common stock.

### III.

The individual defendants move to dismiss on the grounds that they are not subject to the personal jurisdiction of the Court.[2] They claim that they have not maintained the requisite minimum contacts with this district to satisfy the requirements of due process. In the alternative, they argue that the individual defendants are not subject to this Court's jurisdiction because of the fiduciary shield doctrine, which provides that jurisdictional contacts made by an individual acting solely on behalf of an employer cannot constitute the basis of in personam jurisdiction over such a person in his individual capacity. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981). The Court finds that neither doctrine is applicable to the facts alleged.

■ Plaintiff brings this action, *inter alia,* under the Securities Exchange Act of 1934, 15 U.S.C. sec. 78a *et seq.* and RICO, 18 U.S.C. sec. 1961 *et seq.* Both of these statutes authorize nationwide service of process. 15 U.S.C. sec. 78aa (1934 Act); 18 U.S.C. sec. 1965(d) (RICO). Where federal laws provide for nationwide service, both the minimum contacts analysis of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and the fiduciary shield doctrine of *Marine Midland,* 664 F.2d 899, are inapposite. Under nationwide service statutes, a defendant need only maintain minimum contacts with the United States as a whole, rather than any particular state, for a federal court to exercise personal jurisdiction consistent with the due process clause. *Haile v. Henderson National Bank,* 657 F.2d 816, 824–26 (6th Cir.1981) *cert. denied* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982). *See also Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1314–1316 (9th Cir.1985); *Fitzsimmons v. Barton,* 589 F.2d 330, 332–35 (7th Cir.1979); *Mariash v. Morrill,* 496 F.2d 1138, 1142–43 (2d Cir.1974). The only limitation on the exercise of such jurisdiction is that it must be fundamentally fair and that the notice must be calculated to inform the defendant of the pendency of the suit. *Haile,* 657 F.2d at 825, *quoting Driver v. Helms,* 74 F.R.D. 382, 390–91 (D.R.I.1977), *modified on other grounds,* 577 F.2d 147 (1st Cir. 1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979); *Mariash,* 496 F.2d at 1142–43.[3]

■ The individual defendants are all either Colorado or Oklahoma residents. Clearly they have maintained the requisite minimum contacts with the United States. They have all apparently been served and there is no evidence that it would be fundamentally unfair to force them to defend against this action. Accordingly, there is

---

**2.** Defendants do not dispute the Court's jurisdiction over Teleshare. They do, however, move to dismiss International Teleshare for lack of personal jurisdiction. In response, plaintiff has agreed to dismiss International Teleshare without prejudice.

**3.** Defendants cite *Doll v. James Martin Associates,* 600 F.Supp. 510 (E.D.Mich.1984), as standing for the proposition that even in a federal securities case, personal jurisdiction is determined by the defendant's contacts with the forum state and the state's long arm statute. *Doll* does not support this assertion. In *Doll,* none of the defendants resided in the United States or were American citizens. Under those circumstances, the court's application of the long-arm due process analysis to determine defendant's contacts with the United States as a whole was appropriate and consistent with *Haile* and *Mariash.*

no basis to dismiss any of the defendants for lack of personal jurisdiction.[4]

## IV.

■ Defendants have also argued that plaintiff has failed to state a RICO claim because the described use of the mails and the telephone do not constitute a "pattern of racketeering activity." Under 18 U.S.C. sec. 1961(5), a pattern is characterized by the commission of two or more predicate criminal acts within a ten year period. In addition, the predicate acts must be related in some way and must present a threat of continuing criminal activity. *Sedima, S.P. R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). A relationship exists if criminal acts have "the same or similar purposes, results, participants, victims, or methods of commission[.]" *H.J., Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, ——, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195, 208 (1989). The threat of continued criminal activity is present where there are "a series of predicates extending over a substantial period of time" or where repeated predicates are likely to continue into the indefinite future *Id.*, —— U.S. at ——, 109 S.Ct. at 2902, 106 L.Ed.2d at 209.

Here, plaintiff has alleged both the requisite relationship and continuity to make out a valid RICO pattern. Over a two year period, defendants contacted plaintiff on at least five different occasions and conducted scores of telephone conversations regarding investments in and loans to Teleshare and International Teleshare. Each of the transactions had a similar purpose, victim, method of commission, and result, thus demonstrating relationship between the predicate acts. In addition, the duration of the scheme was sufficiently protracted to suggest the threat of continuing criminal activity.

**4.** While it may be true that the connection of some of the individual defendants to the alleged fraud is highly attenuated, a motion to dismiss for lack of personal jurisdiction is the wrong way to secure their dismissal.

**5.** Defendants do not dispute venue as to plaintiff's securities claims because of the liberal

## V.

Defendants argue that venue in the Eastern District of Michigan is improper as to the RICO claims under 18 U.S.C. sec. 1965(a) and 28 U.S.C. sec. 1391(b).[5] The RICO venue provision, 18 U.S.C. sec. 1965(a) authorizes a plaintiff to bring an action in any district where "[the defendant] resides, is found, has an agent, or transacts his affairs." The term "transacts his affairs[,]" was drawn from section 12 of the Clayton Antitrust Act, 15 U.S.C. sec. 22, and has been interpreted to require that a defendant regularly transacts business of a substantial and continuous character within that district. *Abeloff v. Barth*, 119 F.R.D. 315, 326 (D.Mass.1988); *Dody v. Brown*, 659 F.Supp. 541, 544–45 (W.D.Mo.1987); *Miller Brewing Co v. Landau*, 616 F.Supp. 1285, 1288 (E.D.Wis. 1985); *King v. Vesco*, 342 F.Supp. 120, 122–24 (N.D.Cal.1972). It is clear that defendants do not satisfy any of the requirements of the RICO venue provision. None of the defendants reside or are incorporated in the state of Michigan. They do not maintain offices or agents in the state. And although they may do business in Michigan, that business cannot be fairly described as being of a substantial and continuous character.

■ If venue is improper under 18 U.S.C. sec. 1965(a), it may still be proper under the federal venue statute, 28 U.S.C. sec. 1391. *DeMoss v. First Artist Production Co., Ltd.*, 571 F.Supp. 409 (N.D.Ohio 1983), *appeal dismissed*, 734 F.2d 14 (6th Cir.1984). Section 1391(b) provides that a federal question case may be maintained in the forum where all the defendants reside or where the claim arose. Under 28 U.S.C. sec. 1391(c), a corporation may be sued in any district "in which it is subject to personal jurisdiction at the time the action was commenced."[6] As discussed in section III,

venue provisions of 15 U.S.C. sec. 78aa. *See S–G Securities, Inc. v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1121 (D.Mass.1978).

**6.** The former language of section 1391(c) was substantially revised by the Judicial Improvements and Access to Justice Act, Pub.L. 100–702,

*supra,* personal jurisdiction may be asserted over defendants as to the RICO claims by virtue of the nationwide service of process provision. Thus, the Court finds that venue is proper as to defendant Teleshare.

However, section 1391(c) does not apply to the individual defendants. If venue lies at all as to them, it must be under the provisions of section 1391(b). None of the defendants reside in the district. The issue then becomes where the claim arose. This has been a source of considerable uncertainty among the federal courts. 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* sec. 3806. The Supreme Court's latest pronouncement on the point, *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), has only served to add to the confusion and has been roundly criticized for its ambiguity. *See e.g. Dody v. Brown,* 659 F.Supp. 541, 548 (W.D.Mo. 1987), and cases cited therein. The Court of Appeals for the Sixth Circuit has not yet addressed the issue and the few published discussions of the lower courts in this circuit have been generally brief and unhelpful.

Three basic tests have emerged as to where a claim is held to arise. One approach, first articulated by a district court in the Eastern District of Pennsylvania, has been to determine in which district the "weight of contacts" lie. *See Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa.1968). The weight of contacts test would find venue proper in the district in which the contacts weigh most heavily. A second approach, proposed by the American Law Institute, would find venue proper in any district where "a substantial part of the events and omissions giving rise to the claim occurred." ALI Study of the Division of Jurisdiction Between the State and Federal Courts, sec. 1303, 1314 (1969). A third

approach, applied particularly in tort cases, is to look to the place of the injury. *See e.g. Iranian Shipping Lines, S.A. v. Moraites,* 377 F.Supp. 644 (S.D.N.Y.1974).

Having considered the various approaches taken by the courts over the years, the Court concludes that the weight of contacts approach is the most sound and not inconsistent with *Leroy. See* Wright, Miller, & Cooper, sec. 3806 at 66 ("The [Supreme] Court did not endorse a weight of the contacts approach in Leroy, but it seems that is what the Court used.") Applying this form of analysis to the facts, it is clear that the weight of the contacts lie in the Eastern District of Michigan. Defendants repeatedly solicited investments from plaintiff in Michigan. They borrowed money from a Michigan resident which they were obligated to repay in Michigan. They telephoned plaintiff on numerous occasions and they mailed fraudulent materials to him in Michigan. In each instance, it was the defendants who sought out plaintiff, not the other way around. The only contact plaintiff's claim has with Colorado and Oklahoma is that defendants reside there and the calls and mailings originated there. This is insufficient to offset the weight of the Michigan contacts.[7]

## VI.

Defendants' final claim is that plaintiff's complaint is so vague and general as to make it impossible to respond and that a more definite statement should be ordered. Since defendants' motion to dismiss was filed, plaintiff has filed a RICO case statement, setting out with specificity the substance of his claims. The Court finds this sufficient to enable defendants to prepare a defense.

SO ORDERED.

---

Title X, sec. 1013(a), 102 Stat. 4669 (Nov. 13, 1988).

**7.** The Court's resolution of defendants' venue claims make it unnecessary to discuss the motion to transfer for improper venue under 28

U.S.C. sec. 1406(a). As to his motion to transfer to a more convenient forum, 28 U.S.C. sec. 1404(a), suffice it to say that to transfer would merely shift the burden of inconvenience from defendants to plaintiff.