**NED CHARTERING & TRADING, INC., Appellee,**

v.

**REPUBLIC OF PAKISTAN and Ministry of Food and Agriculture, Appellants.**

**No. 01–7016.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 2002.

Decided July 2, 2002.

Nicholas H. Cobbs argued the cause and filed the briefs for appellants.

Paul M. Tschirhart argued the cause for appellee. With him on the brief was Heather M. Spring.

Before: EDWARDS, HENDERSON and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Plaintiff Ned Chartering & Trading, Inc. brought this case against the Republic of Pakistan and its Ministry of Food and Agriculture, contending that Pakistan was required to pay it the proceeds of wheat shipments to which plaintiff was entitled as assignee of a maritime contract. The district court granted summary judgment against Pakistan for $268,000 plus interest that Pakistan had instead paid to the assignor of the contract. Pakistan contends that the district court erred in not delaying its ruling on the motion for summary judgment in order to give it an opportunity to take further discovery. Because the district court did not abuse its discretion in ruling without extending the discovery period, we affirm.

I

In 1993, the Republic of Pakistan entered into a maritime contract, known as a "charter party," with Horsebridge Enterprises, Ltd. of Gibraltar for the shipment of wheat from Turkey to Pakistan. Ned Chartering, a Washington, D.C. corporation, acted as shipbroker and loaned Horsebridge the money to charter the vessels that were to transport the wheat. The loan agreement contained an assignment, whereby in exchange for the loan it received from Ned Chartering, Horsebridge assigned its right to the proceeds of the charter party to Ned. Pakistan was to make its charter party payments through a letter of credit drawn in favor of Ned.

Pursuant to the charter party and assignment, as the wheat arrived Pakistan paid 90% of the amount it owed Horsebridge directly to Ned Chartering. Pakistan retained 10%, pending "necessary adjustment" for demurrage and additional freight charges. Rider Clauses to Charter Party at 6 (J.A. at 55). Before final payment was made, disputes arose between Pakistan and Horsebridge concerning the amount of the adjustments, and between Horsebridge and Ned Chartering concerning the amounts due between them. Both Ned Chartering and Horsebridge pressed Pakistan for payment, and Horsebridge assured Pakistan that it would indemnify the Republic against any claims made by Ned. Ultimately, Horsebridge persuaded Pakistan to pay it the amount still owed for the final delivery of the wheat, which totaled $268,000. By the time Pakistan paid Horsebridge, on or about October 31, 1995, the letter of credit had expired.

Ned Chartering initially sued Horsebridge, contending that the latter owed it for payment due under the loan agreement. Although Ned prevailed, Horsebridge turned out to be judgment proof. Ned then turned to Pakistan. On October 29, 1998, it sued Pakistan and its Ministry of Food and Agriculture for failing to pay it the final installment under the assignment agreement. Pakistan, in turn, filed a third-party complaint against Horsebridge. Pakistan, however, was unable to serve process on Horsebridge, and the district

court struck the third-party complaint on March 21, 2000. In the meantime, the parties conducted some discovery, including the exchange of interrogatories and document requests.

On May 11, 2000, Ned Chartering filed a motion for summary judgment against Pakistan. Pakistan opposed summary judgment on two grounds: (1) that by the time the final proceeds were paid, the assignment was void because the letter of credit had expired; and (2) that it needed time to conduct further discovery. The district court rejected the first contention because, under the unambiguous language of the assignment agreement, Pakistan's obligation to pay was continuing and the letter of credit was only one means of making payment. The court rejected the second contention for two reasons: Pakistan had "already had sufficient discovery," and had "failed to demonstrate how the further discovery [it] request[ed] would produce any issues of material fact." *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, No. 98–CV–2626, mem. op. at 8 (J.A. at 176) (D.D.C. Dec. 4, 2000). Accordingly, the court granted summary judgment in favor of Ned Chartering.

## II

■ In this court, Pakistan has abandoned its argument based on the expiration of the letter of credit, and relies instead on its second contention, that the district court should not have ruled against it without permitting time for further discovery.[1] We review such claims solely for abuse of discretion by the district court. *See, e.g., Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1559 (D.C.Cir.

1991). We conclude that either of the two reasons given by the district court for denying further discovery was sufficient to justify its decision, and that neither represents an abuse of discretion.

### A

■ The district court concluded that the more than eighteen months that passed between the date Ned Chartering filed its complaint and the date it filed its motion for summary judgment were sufficient for the parties to complete discovery. Although summary judgment should only be entered "after adequate time for discovery," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), we grant district courts great latitude in determining how much time is adequate, and would be hard pressed to find that limiting discovery to eighteen months was an abuse of discretion in this case. Pakistan sought an extension of time "in order to identify any defenses Horsebridge may have had against" Ned Chartering. *Ned Chartering*, mem. op. at 8 (J.A. at 176). "Specifically," Pakistan "asserted a need to depose the president of [Ned Chartering], Nadeem Ikramullah." Appellants' Br. at 14. Pakistan offers no reason to believe that it should have taken more than eighteen months to accomplish that kind of discovery. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C.Cir.1983) (holding that a district court does not abuse its discretion in denying permission to conduct additional discovery when the party has had ample opportunity to take discovery).

Pakistan does note that, at the time Ned Chartering moved for summary judgment,

---

1. Pakistan also contends that the district court should not have decided the summary judgment motion without holding an oral hearing. The decision to hold an oral hearing is committed to "the discretion of the court,"

D.D.C. Local Rule 7.1(f); *see United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F.Supp. 287, 292 n. 7 (D.D.C.1997), and we discern no abuse of discretion here.

the court had not yet set a discovery deadline. The absence of a deadline, however, was not a license to delay completion until one was set. Moreover, on April 20, 2000—weeks before the filing of the motion for summary judgment—the parties filed a joint report pursuant to Local Rule 16.3, which requires counsel to meet and discuss "a date for completion of all discovery." That joint report established a schedule for the filing of the summary judgment motion: Ned Chartering was to file for summary judgment within the next two weeks, Pakistan was to have thirty days to file an opposition, and Ned was to have fifteen days in which to reply. *See* Joint Rep. of the Parties, Appellee's Br. app. 2 at 2. The report declared that "[t]hese dates are mutually acceptable to the parties," and recited that "both parties have already taken some discovery and . . . no material facts remain in dispute." *Id.* at 2–3. The court adhered to this schedule, and Pakistan therefore has no cause for complaint.

On appeal, Pakistan contends that, because "attorneys are not clairvoyant," it could not foresee the discovery it would need until it saw Ned Chartering's summary judgment motion. Appellants' Reply Br. at 10. But Pakistan did not mention the limits of its attorneys' predictive powers when it agreed to the schedule of the joint report, does not now cite anything in Ned's motion that its attorneys did not anticipate, and suggests no reason why the relevance of "any defenses that Horsebridge may have had against the plaintiff" was not as apparent before Ned filed as it was afterwards.

Pakistan also notes that the district court did not strike its third-party complaint against Horsebridge until March 21, 2000, and contends that "[i]t made no sense for Pakistan to conduct discovery concerning [Ned Chartering's] transac-tions with Horsebridge while there remained a prospect that Horsebridge would become a party to the action." Appellants' Br. at 15. Pakistan does not explain why it "made no sense" to conduct that discovery before learning whether it would be able to join Horsebridge. If Ned Chartering's transactions with Horsebridge afforded Pakistan a defense to Ned's action on the assignment, presumably they did so regardless of whether Horsebridge was a third-party defendant. And even if conducting discovery before the court ruled on the third-party complaint did not make sense, Pakistan does not explain why it did not initiate discovery during the six weeks that passed between the time the court struck the third-party complaint and the date Ned Chartering filed for summary judgment—nor why it failed to seek more time in the joint report.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in concluding that Pakistan had already had sufficient time to complete the discovery it needed to defend against plaintiff's summary judgment motion.

### B

■ The district court also denied Pakistan's request for a discovery extension on the ground that it had "failed to demonstrate how the further discovery [it] request[ed] would produce any issues of material fact." That is certainly an appropriate ground upon which to deny a discovery request. *See Moore v. United States,* 213 F.3d 705, 710 n. 3 (D.C.Cir. 2000) (holding that "a district court may deny discovery requests when additional facts are not necessary to resolve the summary judgment motion"); *cf.* FED. R.CIV.P. 56(f) (providing that a court "may order a continuance to permit . . . discovery to be had," *if* it should "appear from the affidavits of a party opposing

the motion that the party cannot ... present by affidavit facts essential to justify the party's opposition"). And we agree that it was applicable here.

■ Under District of Columbia law, the assignment of rights under a contract creates an interest in the assignee, and any party that previously had an obligation to the assignor under the contract thereafter becomes obligated to the assignee and liable to it for failure to fulfill that obligation. *See District of Columbia v. Thomas Funding Corp.*, 593 A.2d 1030, 1033–34 (D.C.1991); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 317 (1979). Accordingly, Ned Chartering contended that, because Pakistan was the obligor under the charter party, Horsebridge's assignment of the proceeds of that contract to Ned obligated Pakistan to pay it those proceeds. At issue here is Pakistan's request for discovery related to "any defenses Horsebridge may have had against" Ned Chartering. *Ned Chartering*, mem. op. at 8 (J.A. at 176). As the district court noted, Pakistan sought this discovery on "the assumption that [it] would be able to utilize such defenses against" Ned as well. *Id.* at 8–9. But Pakistan offered the court no grounds for concluding that this assumption was correct. *Id.* at 9.

■ In support of the assumption that it could assert against Ned Chartering any defenses Horsebridge had against Ned, Pakistan cited a maxim of District of Columbia contract law: "It is well settled that an assignee of a non-negotiable chose in action acquires no rights superior to those held by his assignor and is generally subject to any setoff available to the obligor against the assignor." *United States Nat'l Bank v. Madison Nat'l Bank*, 355

F.Supp. 165, 169 (D.D.C.1973). But as the district court concluded, while this maxim is supported by the cases Pakistan cited,[2] it "lends no support to the defendant['s] arguments." *Ned Chartering*, mem. op. at 9 (J.A. at 177). That is so because in this particular play the parties' roles are as follows: Ned Chartering is the assignee, Horsebridge the assignor, and Pakistan the obligor. Hence, the above maxim establishes only that Ned Chartering (the assignee) took no rights against Pakistan (the obligor) superior to those held by Horsebridge (the assignor), which means that Ned is generally subject to any defense available to Pakistan against Horsebridge. *See Madison Nat'l Bank*, 355 F.Supp. at 169. Although this would make *Pakistan*'s defenses against Horsebridge relevant, Pakistan did not seek discovery of such defenses—presumably because it already knew its own defenses. However, as the district court rightly concluded, neither the maxim cited by Pakistan nor any of the cited cases made relevant the discovery of *Horsebridge*'s defenses—the only discovery that Pakistan claimed to be seeking.

■ On appeal, Pakistan argues that the district court erred because it erroneously construed the assignment of the charter party as "an absolute assignment," when it actually "functioned as a security interest" for the underlying loan from Ned Chartering to Horsebridge. Appellants' Br. at 11. On this theory, Pakistan contends that it was relevant to discover whether Horsebridge had paid Ned in full for the loan. If Horsebridge had paid Ned, that payment assertedly would have redeemed Horsebridge's collateral and left Ned without an interest in the proceeds of

---

2. *See* Opp'n to Pl.'s Mot. for Summ. J. at 7 (J.A. at 121) (citing *Rittenberg v. Donohoe Const. Co.*, 426 A.2d 338, 341 (D.C.1981); *General Elec. Credit Corp. v. Security Bank*, 244 A.2d 920, 923 (D.C.1968); *Hudson Supply & Equip. Co. v. Home Factors Corp.*, 210 A.2d 837, 838 (D.C.1965); *United States v. Griffin*, 707 F.2d 1477 (D.C.Cir.1983)).

the charter party. *Id.* at 12 (citing D.C.Code § 28:9–506; *Applied Cos. v. United States,* 144 F.3d 1470, 1477 (Fed. Cir.1998)).

As might be expected, Ned Chartering disputes Pakistan's factual assertion, contending that the assignment was in fact "an absolute transfer of property rights," rather than a mere security interest. Appellee's Br. at 10 (quoting the assignment agreement, J.A. at 78, as transferring "all right, title and interest" in all proceeds payable to Horsebridge under the charter party). We need not resolve this dispute. Pakistan never asserted the "security interest" theory before the district court or cited any precedent that mentioned it, and "[i]t is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *United States v. TDC Mgmt. Corp.,* 288 F.3d 421, 425 (D.C.Cir.2002) (quoting *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1084–85 (D.C.Cir.1984)). That rule is particularly apt when reviewing a district court's determination that the discovery sought by a party is not relevant to the merits of the action. It can hardly be an abuse of discretion for a court to find requested discovery irrelevant when the only grounds upon which it might be relevant are not asserted until long after the court rules.

Pakistan insists that its security interest theory is not really a new argument, but instead was implicit in the arguments it made before the district court. It notes, for example, that it described the assignment of the charter party proceeds as "a security interest" in its opposition to Ned Chartering's motion for summary judgment. Opp'n to Pl.'s Mot. for Summ. J. at 3 (J.A. at 117). Although Pakistan did include that description, it did so only in the "background" section of the pleading. Pakistan attached no legal significance to

the description, and made no argument relating to it, in the sections devoted to explaining why the court should deny summary judgment or at least postpone it pending further discovery. There was no reason for the district court, reading that description, to attach a significance to it that Pakistan apparently did not itself discern.

While conceding that the "authorities cited to the district court to support Pakistan's position did not directly address the limitations that the law imposes on assignments that are security interests," Appellants' Reply Br. at 4, Pakistan also contends that its security interest theory is really only another way of expressing the legal theory upon which it did rely in the district court: that an assignee "acquires no rights superior to those held by his assignor." *Madison Nat'l Bank,* 355 F.Supp. at 169. If discovery showed that Horsebridge had already paid off its debt to Ned Chartering, Pakistan argues, then granting judgment against the Republic would mean that Ned "was entitled to be paid twice on the same debt." And that would mean that Ned had acquired rights "that were superior to those of its assignor." Appellants' Reply Br. at 4.

As with the security interest theory, however, this theory suffers from the fact that it was not raised below. Pakistan's opposition to summary judgment contains no mention of a claim that granting judgment for Ned Chartering would be equivalent to holding that Ned was entitled "to be paid twice on the same debt," and that such a holding would grant Ned rights superior to those of Horsebridge. And even if Pakistan had made the argument, *Madison*'s maxim would be of no assistance to it. *Madison* and the other cases cited by Pakistan hold only that the assignee acquires no rights *against the obligor* superior to those held by the assignor.

Even if Ned had previously been paid by Horsebridge, execution of the judgment in this case would not mean that it had been "paid twice on the same debt" *by Pakistan*.

 Finally, Pakistan cites cases that it contends support the proposition that a court must apply the relevant law regardless of whether the parties cite it. It is true that "[w]hen an issue or claim is properly before the court, the court is not *limited* to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proposed construction of governing law." *United States Nat'l Bank v. Independent Ins. Agents*, 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152 (1991)) (emphasis added). But while a court *may* draw upon its own knowledge of applicable precedents in ruling on a motion, it is not *required* to unearth theories and precedents not cited by a party in order to determine whether that party's discovery requests are relevant. Bringing those precedents and theories to the attention of the district judge is the job of the party's attorneys.

Because Pakistan gave the district court no reason to believe that the discovery it sought was legally relevant to its defense, and because the only possibly relevant reason it now offers was not presented to that court, the denial of time for further discovery did not constitute an abuse of discretion.

## III

The task of district courts is hard enough as it is. We will not make it doubly so by second-guessing their reasonable scheduling decisions, or requiring them to discern the relevance of parties' requests based on arguments never made

supported by precedents never cited. The judgment of the district court, granting the plaintiff's motion for summary judgment, is

*Affirmed.*