Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 19, 2004        Decided August 13, 2004

No. 03-5237

SECURITIES AND EXCHANGE COMMISSION, AND
DEBORAH R. MESHULAM,
APPELLEES

v.

PAUL A. BILZERIAN
APPELLEE

ERNEST B. HAIRE, III,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01221)

———

*S. Scott Morrison* argued the cause for appellant. On the briefs was *G. Michael Nelson.*

*Charles B. Wayne* argued the cause for appellee Deborah R. Meshulam. On the brief was *Deborah J. Israel.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, ROGERS, and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: This case is ancillary to a long-standing Securities and Exchange Commission (SEC) enforcement proceeding against Paul A. Bilzerian for violation of federal securities laws. The United States District Court for the District of Columbia created a receivership estate and appointed a receiver to satisfy the SEC's judgment against Bilzerian's assets. In the instant action, the receiver filed a complaint against defendant Ernest B. Haire, III to collect on the principal, interest, and fees due and owing to the receivership estate on a $1 million loan. Haire moved to dismiss the complaint, alleging that the court lacked personal jurisdiction over him, that venue in the District of Columbia was improper, that the forum was not convenient, and that the receiver had failed to join a necessary party. The district court rejected those challenges, and entered summary judgment in the receiver's favor. We affirm.

I

In 1993, the United States District Court for the District of Columbia ordered Bilzerian to disgorge over $33 million in profits and $29 million in prejudgment interest obtained from his unlawful transactions in several common stocks. *SEC v. Bilzerian*, 814 F. Supp. 116 (D.D.C. 1993), *aff'd*, 29 F.3d 689 (D.C. Cir. 1994). On December 22, 2000, after finding Bilzerian in contempt for failing to pay the 1993 disgorgement judgment, the district court appointed the appellee, Deborah Meshulam, as receiver "for the purpose of identifying, marshaling, receiving and liquidating [Bilzerian's] assets." *SEC v. Bilzerian*, 127 F. Supp. 2d 232, 232 (D.D.C. 2000), *aff'd*, 2003 WL 22176183 (D.C. Cir. 2003) (hereinafter Receivership Order). The Receivership Order authorized the receiver to "take and maintain complete and exclusive control, possession and custody of Bilzerian's assets wherever situated" and to "liquidate any interest in any asset held by anyone on behalf of Bilzerian, including but not limited to the initiation and prosecution of litigation against others to recover such asset

and/or interests in asset on behalf of the Receivership Estate." *Id.* at 233. The receiver filed copies of the Receivership Order in various federal district courts, including the United States District Court for the Middle District of Florida where Haire resides.

The assets of the receivership estate included, inter alia, the assets of Overseas Holdings Limited Partnership (OHLP), a partnership owned by the Bilzerian family to which Bilzerian transferred substantial assets during the course of the SEC litigation. On July 12, 2000, during the pendency of the contempt proceeding against Bilzerian, OHLP loaned Haire $1 million. The loan was reflected in a promissory note (the "Note"), which accrued interest at an annual rate of 12% and made the principal payable on demand. The Note was secured by Haire's pledge of his stock shares in Cimetrix, Inc. OHLP demanded payment on August 23, 2000, and Haire's failure to pay within 15 days of that demand triggered the Note's terms governing default and penalties. Haire and OHLP subsequently executed a Forbearance and Extension Agreement on March 1, 2001, under which Haire agreed to pay accrued interest immediately, and OHLP agreed to extend the due date for payment of principal until March 1, 2003.

In December 2001, OHLP agreed to "transfer to the Receiver all right, title and interest in that certain note and stock pledge agreement and related documents by Ernest Haire III in the principal amount of $1 million, as extended." Consent and Undertakings Agreement at 5 (J.A. 87); *see also* Assignment Without Recourse (J.A. 100). Haire, in his capacity as trustee of another Bilzerian-related entity, signed the agreement. On January 16, 2002, the court entered the agreement as a consent judgment. On April 19, 2002, the receiver sent a letter to Haire demanding that he immediately pay all accrued and unpaid interest due on the Note, and warning that failure to pay within fifteen days would result in a default under the Note's express terms. Haire failed to pay, and the receiver notified him that the entire $1 million principal (and accumulated interest and penalty fees) was immediately due.

On June 19, 2002, the receiver filed the present complaint against Haire, demanding judgment for the full amount of principal and accrued interest under the Note. Haire filed a motion to dismiss the complaint on the grounds of lack of personal jurisdiction, improper venue, forum non conveniens, and failure to name an indispensable party. At the same time, the receiver moved for summary judgment. The district court denied Haire's motion to dismiss, Mem. & Order (D.D.C. Jan. 17, 2003) (hereinafter Jan. 2003 Mem. Op.), and granted the receiver's motion for summary judgment, Mem. & Order (D.D.C. July 17, 2003) (hereinafter July 2003 Mem. Op.).

Haire now appeals.[1] We review both of the district court's orders de novo. *See Gormon v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002); *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). In Part II, we consider Haire's challenge to the court's conclusion that it had personal jurisdiction. In Part III, we consider Haire's remaining objections to the court's order denying dismissal, as well as his objections to the court's grant of summary judgment to the receiver.

## II

We begin with the threshold question of whether the United States District Court for the District of Columbia has personal jurisdiction over the defendant, a Tampa, Florida resident who claims not to have any contacts with the District of Columbia. In *SEC v. Vision Communications, Inc.*, a case

---

[1] Haire also appeals the district judge's 2002 denial of his motion to recuse the judge from participation in Haire's case. *See* Mem. & Order (D.D.C. Dec. 4, 2002). Haire previously sought to overturn that denial by petitioning for a writ of mandamus. In denying the writ, a panel of this court readily held that the "district court did not abuse its discretion in deciding not to recuse." *In re: Ernest Haire*, 2003 WL 1873948, at *1 (D.C. Cir. 2003). That holding, premised not on the elevated standard of review for mandamus, but rather on the same standard that we would apply to the recusal question on appeal, is the law of the case.

5

also involving a receiver in a proceeding ancillary to an SEC enforcement action, we explained how such personal jurisdiction could be obtained. 74 F.3d 287, 290–91 (D.C. Cir. 1996). Step one involves Federal Rule of Civil Procedure 4(k)(1)(D), which provides that "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . . when authorized by a statute of the United States." FED. R. CIV. P. 4(k)(1)(D). Step two requires a statute that provides the "needed 'authorization' to have [the defendant] served" in a district "outside the territorial boundaries of the U.S. District Court for the District of Columbia." 74 F.3d at 290. Section 1692 of Title 28, we said, could provide such authorization. *Id.* That section states:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district but orders affecting the property shall be entered of record in each of such districts.

28 U.S.C. § 1692. Finally, "to invoke § 1692, a receiver first must comply with 28 U.S.C. § 754." 74 F.3d at 290. Under that section, "a receiver appointed in one district may obtain jurisdiction over property located in another district by filing in the district court of that district, within ten days after the entry of his order of appointment, a copy of the complaint and his order of appointment." *Id.*[2] Thus, we said, § 754 is "a

---

[2] Section 754 provides, in pertinent part:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof. . . . Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to provide such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

stepping stone on [the court's] way to exercising *in personam* jurisdiction over" one who holds receivership assets in a remote district. *Id.* at 290.[3]

As precedent, *Vision Communications* relied on the Sixth Circuit's decision in *Haile v. Henderson National Bank*, 657 F.2d 816 (6th Cir. 1981), which is on all fours with the case presently before us. In *Haile*, a receiver was appointed in the Middle District of Tennessee for a bankrupt church and its assets. *Id.* at 818. The receiver then brought suit against an individual in the Northern District of Alabama who had defaulted on a note held by the church. *Id.* at 820. The Alabama defendant resisted on the ground that the district court in Tennessee lacked personal jurisdiction over him, and that court agreed, concluding that while they may provide the court with control of the property of the debtor, "neither 28 U.S.C. § 754 nor 28 U.S.C. § 1692 . . . grants this court personal jurisdiction of the defendants." *Id.* at 820.

The Sixth Circuit reversed. It held that, pursuant to § 754, "the territorial jurisdiction of the appointing court is extended to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754." *Id.* at 823. It noted that "Rule 4 of the Federal Rules of Civil Procedure contemplates the use of statutes of the United States which provide for service of process upon a party not . . . found within the state in which the district court is held." *Id.* at 824. And it concluded that the "statute of the United States which provides for service of process beyond the territorial limits of the state in which the district court sits in the case at bar is 28 U.S.C. § 1692." *Id.* "The process authorized by § 1692," the court said, "is not 'extra-territorial' but rather nation-

_____

28 U.S.C. § 754.

[3] Further support for the proposition that § 754 is a "stepping stone" is the fact that, prior to 1948, the provisions of both sections were contained in a single predecessor statute, 28 U.S.C. § 117 (1940). *See* Reviser's Notes, H.R. REP. NO. 80–308, at 1807, 1869 (1947) (noting that § 117 was the basis for §§ 754 and 1692).

wide." *Id.* at 826. Under that section, "[t]he appointment court's process extends to any judicial district where receivership property is found." *Id.*

In *American Freedom Train Foundation v. Spurney*, the First Circuit pronounced itself in "agreement with the Sixth Circuit's holding that pursuant to sections 754 and 1692, '[t]he appointment court's process extends to any judicial district where receivership property is found.'" 747 F.2d 1069, 1073 (1st Cir. 1984) (quoting *Haile*, 657 F.2d at 826). And both circuits' discussions paralleled, and *Haile* expressly relied upon, the views of Professor Moore, who concluded: "[I]n cases under these two sections, the minimum contacts analysis of *International Shoe* as a limitation on extraterritorial power, does not apply, since service of process under § 1692 [is] nationwide." 7 (Pt. 2) JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 66.08[1] (2d ed. 1996).

In the present case, the district court followed the analysis outlined in *Vision Communications* and *Haile*. The court found that the receiver had complied with § 754 by filing the appropriate documents in the Middle District of Florida, and that this compliance meant that § 1692 authorized service of process. The court further found that Haire had been properly served. Citing Rule 4(k)(1)(D), the court concluded that it therefore had personal jurisdiction over the defendant. Jan. 2003 Mem. Op. at 5.

Haire does not dispute that the receiver filed the appropriate documents in Florida, or that he received service of process there. What he disputes is the district court's authority to issue process to obtain *in personam* jurisdiction over an out-of-state defendant. Section § 1692, Haire contends, authorizes extraterritorial service of process only to obtain *in rem* jurisdiction — jurisdiction over property — in another district, and not *in personam* jurisdiction over a defendant in such a district. When a court exercises only *in rem* jurisdiction, "the resulting judgment can affect only the property" and "cannot personally bind absentees simply on the basis of their interests in the property." 4A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,

FEDERAL PRACTICE AND PROCEDURE § 1070, at 281 (3d ed. 2002) (hereinafter WRIGHT & MILLER).

Haire's contention is, of course, inconsistent with the explanation of the role of § 1692 that we enunciated in *Vision Communications*. Haire contends that explanation was dicta because, in *Vision Communications*, the receiver had failed to make the necessary filings within the ten days required by § 754, which "precluded the district court from using § 754 as a stepping stone on its way to exercising *in personam* jurisdiction." 74 F.3d at 290. Thus, he says, the court's discussion of § 1692 was unnecessary. Haire may be technically correct, but it is apparent that the *Vision Communications* court did not think so. The court made clear that, but for the failure to comply with § 754, the "interplay between Rule 4(k)(1)(D) . . . and 28 U.S.C. § 1692 could have provided th[e] authorization" for service of process sufficient to establish jurisdiction over the person of the defendant. *Id.* at 290. And it ended its opinion with a direction to the parties that it would not have issued had it not thought § 1692 authorized the service necessary to bind the defendant:

> On remand, the court may reappoint the receiver and start the ten-day clock of § 754 ticking once again. Presumably, the receiver will take advantage of his second chance. . . . Once he does so, the receiver will have jurisdiction over the Pennsylvania property and may seek to have Vista Vision served in Pennsylvania under 28 U.S.C. § 1692.

*Id.* at 291.

The defendant asks us to cast aside our statements in *Visions Communications*, as well as the Sixth Circuit's decision in *Haile*, and accept instead the analysis found in an unpublished opinion from the Northern District of Illinois. That court held that § 1692 "merely authorizes extraterritorial service of process in aid of *in rem* actions and does not do so in cases like this one in which the receiver seeks an *in personam* judgment." *Stenger v. World Harvest Church, Inc.*, 2003 WL 22048047, at *2 (N.D. Ill. 2003). The basis for the *Stenger* court's conclusion was that § 1692 "does not

mention *service* of process; rather it speaks only of *issuance* and *execution* of process." *Stenger*, 2003 WL 22048047, at *2. In the *Stenger* court's view, "service of process" and "issuance of process" are not the same thing: only "service" achieves *in personam* jurisdiction; "issuance" is merely the "Clerk's ministerial act of issuing a summons to a plaintiff so that he or she can serve it on the defendant." *Id.* Moreover, *Stenger* continued, "service" and "execution" are also different: while "service" achieves *in personam* jurisdiction, "execution of process involves the act, in an *in rem* action, of attaching property." *Id.*

Section 1692 states that "in a district court where a receiver is appointed for property" — which is the case of the district court here — "process may issue and be executed." 28 U.S.C. § 1692. As *Stenger* concedes, "process" generally refers to "a summons or writ, [especially] to appear or respond in court." *Stenger*, at *2 (quoting BLACK'S LAW DICTIONARY 1222 (7th ed. 1999)). The remaining question, therefore, is the meaning of "may issue" and "be executed." And neither Congress nor the courts have restricted those terms to the meanings insisted upon by *Stenger*.

Even if *Stenger* were correct that "issuance" is merely the "Clerk's ministerial act of issuing a summons," federal rules, statutes, and court opinions have used "execution" as more than merely a synonym for "attaching property." Indeed, Rule 79 of the Federal Rules of Civil Procedure uses "execution of process" as roughly synonymous with "service of process." *See* FED. R. CIV. P. 79 (requiring that the civil docket contain entries showing "the substance of each order or judgment of the court and of the returns showing execution of process"). In that sense, providing that a summons "may issue and be executed" means that the summons may issue and be served. *See also* BLACK'S LAW DICTIONARY, at 589, meaning 1 (defining execution as the "act of carrying out or putting into effect (as a court order)").

"Execution" is also often used to mean the method by which a judgment, including a judgment *in personam*, is

enforced.[4]  This is as distinct from "attachment," which is often used to denote the method by which *in-rem* (or *quasi-in-rem*) jurisdiction is obtained.[5]  In this sense, then, "may issue and be executed" describes the entire process from initial issuance, through service, through judgment, to final enforcement of judgment.

There is also no support for *Stenger*'s insistence that "issuance" is limited to a clerk's ministerial act.  Congress has used "issue" as shorthand to comprehend the phase of the process that extends from issuance of an order through and including its service.[6]  Similarly, courts frequently use "issu-

---

[4] Indeed Rule 69, entitled "Execution," provides that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution."  FED. R. CIV. P. 69(a); *see also* FED. R. CIV. P. 62 (providing that "no execution shall issue upon a judgment" until 10 days after its entry); 28 U.S.C. § 1961 (declaring that "[i]nterest shall be allowed on any money judgment," and that "execution therefor may be levied by the marshal").

[5] *See* 4A WRIGHT & MILLER § 1070, at 291–92; *see also Pennoyer v. Neff*, 95 U.S. 714, 720 (1877) (finding no jurisdiction because, since the property at issue "was not attached" and its "first connection with the case was caused by a levy of the execution," it was therefore not "disposed of pursuant to any adjudication, but only in enforcement of a personal judgment, having no relation to the property, rendered against a non-resident without service of process upon him"); 28 U.S.C. § 1921 (providing for the collection of fees for different writs, including a writ of "execution," and a writ of "attachment in rem").

[6] *See* 15 U.S.C. § 77v(b) (providing that in "case of contumacy or refusal to obey [an SEC] subpoena issued to any person," federal courts "may issue to such person an order requiring such person to appear before the Commission"); 28 U.S.C. § 2361 (providing that in "any civil action of interpleader or in the nature of interpleader . . . a district court may issue its process for all claimants"); Credit Mobilier Act, ch. 226, § 4, 17 Stat. 485, 509 (March 3, 1873) (providing that the "court where said cause is pending may make such orders and decrees, and issue such process as it shall deem necessary to bring in new parties"); *see also Robertson v. Railroad Labor Bd.*, 268 U.S. 619, 624 (1925) (noting that the Credit Mobilier

ance" and "service" interchangeably.[7]

In sum, common legal usage of the words employed in § 1692 support the views expressed by this court in *Vision Communications,* by the First and Sixth Circuits in *American Freedom Train* and *Haile,* and by scholarly commentary. Accordingly, we decline to part company with those views, and we conclude that the "interplay" between Rule 4(k) and 29 U.S.C. §§ 754 and 1692 properly provided the district court with jurisdiction over the person of Mr. Haire.[8]

---

Act provided jurisdiction *in personam* over defendants living in different states).

[7] *See, e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987) ("[I]t is unclear at this time whether it is open to us to fashion a rule authorizing *service of process*. At common law, a court lacked authority to *issue process* outside its district, and Congress made this same restriction the general rule when it enacted the Judiciary Act.") (emphasis added); *Robertson*, 268 U.S. at 622–23 ("In a civil suit in personam, jurisdiction over the defendant . . . implies . . . either voluntary appearance by him or *service of process* upon him. . . . Under the general provisions of law, a United States District Court cannot *issue process* beyond the limits of the district.") (emphasis added); *In re: Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 333 F.3d 763, 768 (7th Cir. 2003) ("The proposition that the federal court lacks the power to *issue nationwide process* must be qualified by the proviso 'unless a federal statute authorizes this step'; and one of the claims in the master complaint rested on RICO, which does authorize nationwide *service of process*.") (emphasis added).

[8] We also reject Haire's contention that, even if § 1692 authorizes the exercise of personal jurisdiction over him, to do so would violate the Due Process Clause because he lacks "minimum contacts" with the District of Columbia. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945). This circuit has held that the requirement of "minimum contacts" with a forum state is inapplicable where the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process. *Briggs v. Goodwin*, 569 F.2d 1, 8–10 (D.C. Cir. 1977), *rev'd sub nom. on other grounds, Stafford v. Briggs*, 444 U.S. 527 (1980). In such circumstances, minimum contacts with the United States suffice. *See generally* 4 WRIGHT & MILLER § 1068.1, at 605–06.

### III

The defendant's remaining challenges to the district court's denial of his motion to dismiss, and to its grant of the receiver's motion for summary judgment, require only brief discussion.[9]

### A

Haire sought dismissal of the complaint on three grounds in addition to personal jurisdiction. First, he contended that venue was improper in the District of Columbia to enforce a contract signed in Florida between two Florida residents. But the district court correctly concluded that, because the receiver's complaint was brought to accomplish the objectives of the Receivership Order and was thus ancillary to the court's exclusive jurisdiction over the receivership estate, venue was properly established. Jan. 2003 Mem. Op. at 5; *see Haile*, 657 F.2d at 922 n.6 ("[W]here jurisdiction is ancillary, the post-jurisdictional consideration of venue is ancillary as well."); 20 WRIGHT & MILLER § 10, at 52–53 (noting with approval that, "where ancillary jurisdiction sufficed to allow a claim or a party without jurisdictional grounds, it was also unnecessary to satisfy the venue statutes with regard to that claim or party"); *see also Scholes v. Lehman*, 56 F.3d 750, 753 (7th Cir. 1995) ("The laying of venue . . . is authorized by 28 U.S.C. § 754, which allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country.").

Second, Haire sought dismissal on the ground that the Note provides that all related actions must be brought in local Florida courts. Although Haire styled this as a forum non conveniens argument, his challenge centered not on the inconvenience or burden of litigating in the District of Columbia, but rather on the Note's forum selection clause. That clause states:

---

[9] In addition to the core arguments set forth below, we have considered all of Haire's myriad variations and sub-arguments as well. We have concluded that they are without merit, and that they do not merit further discussion.

> Venue for any legal proceeding arising under this Note or the Stock Pledge Agreement shall be in the courts located in Hillsborough County, Florida and Maker and Holder waive any right to sue or be sued in any other venue *unless it shall be lawfully required that venue for any legal proceeding lie elsewhere.*

Promissory Note at 2 (J.A. 29) (emphasis added). In arguing that the forum selection clause requires suit in Florida, Haire ignores the clause's exception for cases in which "it shall be lawfully required that venue . . . lie elsewhere." *Id.* As the district court correctly concluded, the Receivership Order satisfies that exception. That Order, which was affirmed by this circuit in an earlier proceeding, provides that the United States District Court for the District of Columbia "shall have *exclusive* jurisdiction over the Receivership Estate," and that "no person or entity shall bring any claim against . . . the Receivership Estate in any forum other than this Court." *Bilzerian*, 127 F. Supp. 2d at 234 (emphasis added), *aff'd*, 2003 WL 22176183 (D.C. Cir. 2003).

Finally, Haire contended that dismissal was required because the receiver failed to join OHLP, the original holder of the Note, as mandated by Rule 19(a)(1). *See* FED. R. CIV. P. 19(a)(1) ("Joinder of Persons Needed for Just Adjudication"); *see also* FED. R. CIV. P. 12(b)(7). Haire asserted that OHLP had fraudulently induced him to sign the Note, and that OHLP had to be joined in order for him to effectively raise that defense. But as Haire himself maintains, the receiver's only rights with respect to the Note were "derived from the assignment by OHLP," and "[a]s an assignee, [the receiver] merely step[ped] in the shoes of the assignor." Appellant's Br. at 30 (citing *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 153 (D.C. Cir. 2002)). Accordingly, as both parties agree, the receiver was "subject to all defenses and rights of setoff that Haire ha[d] against OHLP." Appellant's Br. at 31; *see* Appellee's Br. at 31–32. Because OHLP's presence was not needed for Haire to raise those defenses, "complete relief" could "be accorded among those

already parties" and OHLP was not a necessary party. FED. R. CIV. P. 19(a)(1).[10]

B

Haire also appeals the district court's order granting summary judgment for the receiver, which held, inter alia, that Haire had to pay the receivership estate the principal amount of $1 million plus unpaid and accrued interest. *See* July 2003 Mem. Op. at 26. The purported issues of material fact that Haire asserted in opposing the receiver's motion for summary judgment did not contest anything in the receiver's statement of facts, but instead contested entry of judgment on the grounds of personal jurisdiction, venue, fraudulent inducement, breach of contract, and duress. The first two grounds raised issues identical to those raised in Haire's motion to dismiss, grounds that we rejected in Parts II and III.A. The remaining three are without merit.

Haire's first contention was that he was fraudulently induced into signing the Note. Haire's affidavit asserted that Bilzerian's wife (who controlled OHLP) had assured him that Bilzerian possessed no interest in OHLP's assets, and claimed that Haire did not learn the assurance was untrue (and that the assets were subject to claims by Bilzerian's creditors) until December 2001, more than a year after he signed the Note. But the district court found on the undisputed facts that the receiver had served Haire with copies of the December 2000 Receivership Order on "at least two occasions, the first being on December 22, 2000." July 2003 Mem. Op. at 17–18.[11] That Order decreed that the receivership estate

---

[10] Haire was also free, as the district court noted, to pursue claims for breach of contract, misrepresentation, and fraud that he had filed against OHLP in state court. Jan. 2003 Mem. Op. at 8. At the same time, there was no risk of double recovery against Haire because the consent judgment gave the receiver the sole right to enforce the Note. *See* Consent and Undertakings Agreement at 5 (J.A. 87).

[11] Haire's opposition to summary judgement did not dispute the receiver's statement that she had served two copies of the Receiver-

"shall be comprised of" Bilzerian's assets, "including but not limited to … Overseas Holdings Limited Partnership," and was transmitted with a cover letter notifying recipients that those assets were to be "immediately surrendered to the Receiver." *Id.* (quoting Receivership Order and cover letter). Then, on March 21, 2001 — three months *after* he received this notice that OHLP's assets were subject to the claims of the receivership estate — Haire signed an extension agreement (the Forbearance and Extension Agreement) with OHLP that reaffirmed his obligations under the Note. That reaffirmation, the court held, waived any fraud defense he might have under Florida law. We agree. *See Harpold v. Stock*, 65 So. 2d 477, 478 (Fla. 1953); *Price v. Airlift International, Inc.*, 181 So. 2d 549, 550–51 (Fla. App. Ct. 1966).

Second, Haire contended that OHLP had breached its obligation under the Note by failing to permit him to sell the stock he had pledged as security. But the Note does not mention any such obligation, and the district court correctly found that evidence of a prior or contemporaneous oral agreement is inadmissible under Florida's parol evidence rule when — as here — the contract is unambiguous. *See Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000).

Finally, Haire alleged that *OHLP* had assigned the Note to the receiver under duress. Even if that were true, it would not offer *Haire* a defense to payment on the Note. Moreover, this court has previously held that Haire lacks standing to collaterally attack the consent judgment in which OHLP agreed to assign the Note to the receiver. *See SEC v. Bilzerian*, 2002 WL 1998001, at *1 (D.C. Cir. 2002). Accordingly, the court's grant of summary judgment for the receiver was appropriate.

IV

For the foregoing reasons, we affirm the district court's denial of Haire's motion for dismissal of the receiver's com-

---

ship Order upon him in December 2000. *See* Ernest B. Haire's Opp'n to Receiver's Mot. for Summ. J.

plaint, as well as the court's grant of the receiver's motion for summary judgment.

*Affirmed.*